George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs Sakkara Charles and Sergio Lopez and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *Leona Tavake and Sergio Perez, individually and on behalf of all others similarly situated,*<br><br>      *Plaintiffs,*<br><br>   - against -<br><br>*Tropicale Foods, LLC,*<br><br>      *Defendant.* | No. 21-cv-6058<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Leona Tavake and Sergio Perez (together, "Plaintiffs"), by their attorneys, allege upon information and belief, except for allegations pertaining to Plaintiffs, which are based on personal knowledge, as follows:

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

1. Tropicale Foods, LLC ("defendant") manufactures, labels, markets and sells paletas, with the representation Helados Mexico emblazoned on the front ("Products"):

2. Unfortunately for consumers, the Products are not from Mexico, as



misrepresented on the front. Plaintiffs now bring this action for Defendant's violation of California consumer protection laws that prohibit this type of geographic misrepresentation.

I. **HISTORY OF PALETAS**

2. The 1940s was a time of economic prosperity in Mexico and because of this, ice cream bars made with fresh milk and fresh fruit found their way into the Mexico City market. The ice pops eventually migrated to the United States.

3. Following World War Two, Mexico experienced economic prosperity in the 1940s.

4. During this decade, Ignacio Alcázar, of Tocumbo, Michoacán (see red area on map), México, returned from a journey to the United States.



5. Alcázar noted the popularity of frozen desserts on sticks – "popsicles" – but lamented they were full of artificial ingredients like sugar syrups and food dyes.

6. Alcázar wanted to rely on what his home state had in abundance –whole ingredients like fresh pureed fruits, nuts, and spices.

7. Called "paletas" or "little sticks," these treats were based on fresh milk (Paletas de leche) and fresh fruits.

8. Paletas de leche flavors usually complement the milk base, such as strawberry, cajeta (caramelized milk) and arroz con leche (rice pudding).

9. Paletas de agua (fruit-based) are variable, based on whatever fruits were plentiful in the most recent harvest.

10. Mango, lime and coconut are mainstays, but paletas "adapt their flavors to the tastes of the community and local availability of ingredients," which is why chili pepper varieties are sometimes available.

11. By the end of the 1940s, Alcázar expanded to Mexico City, where this refreshing snack was a perfect fit for the year-round heat.

## II. CONSUMER DEMAND FOR AUTHENTICITY

12. Today's consumers are faced with increasing commercialization of products and seek brands that are genuine – whisky from Scotland, sake from Japan, and Italian tomatoes from Italy.

13. For many consumers, authenticity has overtaken quality as the prevailing purchasing criterion.

14. Consumers often pay a price premium for what they perceive to be authentic products, particularly those perceived to be authentically associated with a specific place, such as Mexico for Defendant's paletas.

15. The reasons include (1) an expectation that a product made in the location where it was first developed will be higher quality than elsewhere and (2) a desire to support and maintain local traditions and cultures at the expense of large-scale production by international conglomerates.

16. In the present instance, consumers expect Defendant's paletas to be made in Mexico and contain the unique characteristics of paletas made there.

## III. REPRESENTATION THAT THE PRODUCTS ARE FROM MEXICO

17. Defendant's marketing and advertising of the Product gives consumers the impression it is made in Mexico. This includes the statement MEXICO emblazoned across the front.



4
CLASS ACTION COMPLAINT
*Tavake v Tropicale Foods, LLC*





18. The above packaging are just some of the examples of the misleading packaging. This class action pertains to all Products with the misleading Helados Mexico representation on the front, and not just those pictured above.

19. Reasonable consumers are aware that frozen desserts can be transported across vast distances, due to modern technology and insulation.

20. However, contrary to the Product's representations and omissions, it is not made in

Mexico, lacks the type and quality of ingredients historically associated with this food and is not made in the traditional methods.

21. The Product is not made in Mexico, but in Ontario, California.

22. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives.

23. The value of the Products that Plaintiffs purchased was materially less than its value asrepresented by Defendant.

24. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

25. Had Plaintiffs and the other Class members known the truth, they would not have bought the Product or would have paid less for it.

26. The Product is sold for a price premium compared to other similar products, no less than $4.99 for six three-ounce bars (528 mL), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

**Jurisdiction and Venue**

27. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

28. Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

29. Some of the members of the proposed class and Defendant are citizens of different states.

Venue is in this district because Plaintiffs reside in this district and a substantial part of the events or omissions giving rise to the claims occurred here.

## PARTIES

30. Plaintiff Leona Tavake is a resident of South San Francisco, California.

1. During the relevant statutes of limitations for each cause of action, Plaintiff Tavake purchased the Products from a retail store in South San Francisco, for personal and household consumption and use, in reliance on the representations that the Products were made in Mexico. Plaintiff Tavake would purchase the Products again in the future if the Products were remedied to reflect Defendant's labeling and marketing claims for it.

31. Plaintiff Sergio Perez is a resident of King City, California.

32. During the relevant statutes of limitations for each cause of action, Plaintiff Perez purchased the Products from a retail store in Soledad, California, for personal and household consumption and use, in reliance on the representations that the Products were made in Mexico. Plaintiff Perez would purchase the Products again in the future if the Products were remedied to reflect Defendant's labeling and marketing claims for it.

33. Defendant Tropicale Foods, LLC, is a California limited liability company with a principal place of business in Ontario, California, Los Angeles County.

**Intradistrict Assignment**

34. Pursuant to Civil Local Rule 3-2(c)-(d), a substantial part of the events giving rise to the claims arose in San Francisco County, and this action should be assigned to the Oakland Division or the San Francisco Division.

## CLASS ACTION ALLEGATIONS

35. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

36. Plaintiffs seek to represent the following class ("Class"):

> All persons residing in the United States who purchased the Product for personal or household consumption and use since August 5, 2017, to present.

37. Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

38. The Class consists of hundreds of thousands of persons, and joinder is impracticable.

39. Common questions of law or fact predominate and include whether Defendant's representations and omissions were and are misleading and if plaintiffs and Class members are entitled to injunctive relief and damages.

40. Plaintiffs' claims and bases for relief are typical of those of other Class members because all were subjected to the same unfair and deceptive representations and omissions.

41. Plaintiffs are adequate Class representatives. Plaintiffs' interests do not conflict with the interests of other Class members. Plaintiffs have selected competent counsel that are experienced in class action and other complex litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

42. Certification is appropriate under Rule 23(b)(3) because the predominance and superiority requirements are met.

43. Common questions predominate over individual questions because the focus of Plaintiffs' claims is on Defendant's practices.

44. A class action is superior to other available methods for adjudication of this controversy, since individual actions would risk inconsistent results, be repetitive, and are impractical to justify, as the claims are modest relative to the scope of the harm.

45. Certification is appropriate under Rule 23(b)(2) to the extent the Class seeks declaratory and injunctive relief because Defendant has acted or refused to act on grounds that apply generally to the Class.

46. Plaintiffs anticipate this Court can direct notice to the Class by publication in major media outlets and the Internet.

# CLAIMS FOR RELIEF

### FIRST CLAIM
**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*
Unlawful Conduct Prong
By Plaintiffs on Behalf of the Class**

47. Plaintiffs incorporate all preceding paragraphs.

48. California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice."

49. Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

1. 21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material"; and

2. 21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement.

50. Defendant's conduct is "unlawful" because it violates the California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"), and California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA").

51. Defendant's conduct violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875 *et seq.* ("Sherman Law"), including:

1. Section 110100 (adopting all FDA regulations as state regulations);

2. Section 110290 ("In determining whether the labeling or

advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food . . . or consequences of customary use of the food . . . shall also be considered.");

3. Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food . . . . An advertisement is false if it is false or misleading in any particular.");

4. Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

5. Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

6. Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

7. Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

52. Each of the challenged statements, representations, omissions and actions taken by Defendant violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

53. Defendant leveraged its deception to induce Plaintiffs and the other Class members to purchase a product that was of lesser value and quality than advertised.

54. Defendant's deceptive advertising caused Plaintiffs and the other Class members to suffer injury-in-fact and to lose money or property.

55. Defendant's actions denied Plaintiffs and the other Class members the benefit of the bargain when they decided to purchase the Product instead of other products that are less expensive and are also not made in Mexico.

56. Had Plaintiffs and the other Class members been aware of Defendant's false and misleading advertising, they would not have purchased the Product at all, or would have paid less than they did.

57. In accordance with California Business & Professions Code section 1720 Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

58. Plaintiffs seek an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through such acts.

59. Therefore, Plaintiffs pray for relief as set forth below.

## SECOND CLAIM
**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*
Unfair and Fraudulent Conduct Prongs
By Plaintiffs on Behalf of the Class**

60. Plaintiffs incorporate all preceding paragraphs.

61. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

62. The false and misleading representations of the Product constitutes "unfair" business acts and practices because they are immoral, unscrupulous, and offend public policy.

63. The gravity of the conduct at issue outweighs any conceivable benefit.

64. The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiffs and the other Class members.

65. Defendant's representations and omissions deceived Plaintiffs and the other Class members about the Products being made in Mexico.

66. Defendant knew or reasonably should have known that its statements and omissions concerning the Product were likely to deceive consumers.

67. In accordance with California Business & Professions Code section 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

68. Plaintiffs seek an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

69. Therefore, Plaintiffs pray for relief as set forth below.

### THIRD CLAIM
**Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*
By Plaintiffs on Behalf of the Class**

70. Plaintiffs incorporates all preceding paragraphs.

71. The FAL prohibits "mak[ing] any false or misleading advertising claim."

72. Defendant makes "false [and] misleading advertising claim[s]" by deceiving consumers as to the immediate origins of the Product, namely, that it was made in Mexico.

73. In reliance on these false and misleading advertising claims, Plaintiffs and the other Class members purchased and consumed the Products without the knowledge that it was not made in Mexico.

74. Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

75. As a result, Plaintiffs and the other Class members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

76. Therefore, Plaintiffs pray for relief as set forth below.

## FOURTH CLAIM
**Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*
By Plaintiffs on Behalf of the Class
(Injunctive Relief Only)**

77. Plaintiffs incorporate all preceding paragraphs.

78. The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

79. Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

  1. Section 1770(a)(4), which prohibits using deceptive representations or designations of geographic origin in connection with goods or services.

80. Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code section 1780.

81. If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and the other Class members will continue to suffer harm.

82. Plaintiffs seek injunctive relief only at this point for Defendant's violations of the CLRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Class, pray for judgment and relief on all of the legal claims as follows:

A. Certification of the Class, certifying Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as counsel for the Class;

B. A declaration that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. A declaration that Defendant has committed the violations alleged herein;

D. For any and all injunctive relief the Court deems appropriate;

E. For monetary damages (except for violation of the CLRA, which seeks injunctive relief only), including but not limited to any compensatory, incidental, or consequential damages, in accordance with applicable law;

F. For any and all equitable monetary relief (except for violation of the CLRA, which seeks injunctive relief only) the Court deems appropriate;

G. For punitive damages (except for violation of the CLRA, which seeks injunctive relief only);

H. For attorneys' fees;

I. For costs of suit incurred;

J. For pre- and post-judgment interest at the legal rate on the foregoing sums; and

K. For such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all causes of action so triable.

Date: August 5, 2021                           Respectfully submitted,

By: */s/ Michael R. Reese*
Michael R. Reese (State Bar No. 206773)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs
and the Proposed Class*